IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| JOE WILLIE JACKSON,<br><br>    Plaintiff,<br><br>v.<br><br>MIDLAND MORTGAGE COMPANY,<br>et al.,<br><br>    Defendants. | No. 20-cv-2549-JTF-tmp |

**REPORT AND RECOMMENDATION**

Before the court is Defendant Midland Mortgage Company's Motion to Dismiss, filed on September 4, 2020. (ECF No. 7.) *Pro se* Plaintiff Joe Willie Jackson filed a response in opposition on September 25, 2020. (ECF No. 11.) Midland replied on October 12, 2020. (ECF No. 25.) Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate. Based on the following, it is recommended that the Motion to Dismiss be granted.

I.   **PROPOSOSED FINDINGS OF FACT**

On September 28, 1994, Plaintiff Joe Willie Jackson's mother ("Ms. Jackson") was approved for a single life insurance policy

with Defendant Midland Mortgage Co. ("Midland") – underwritten by Defendant Minnesota Life Insurance Co. ("Minnesota Life") – that was intended to cover a mortgage loan with Midland in the event of Ms. Jackson's death. (ECF Nos. 1, at 4; 11-6, at 6-9.) This policy was in addition to a joint accidental death policy that Midland had approved for Ms. Jackson the year before. (ECF No. 11-7, at 13.)

On October 1, 2007, Midland sent Jackson a letter advising him that the single life insurance policy would soon be subject to termination because his past due premiums were beginning to accumulate. (ECF No. 11-6, at 11.) Jackson's account with Midland remained in arrears through the early months of 2008 and, as a result, Midland terminated the single life insurance policy. (ECF No. 11-6, at 19.) This left Ms. Jackson only insured under the accidental death policy. (ECF No. 11-7, at 13-14.) Ms. Jackson died of natural causes on September 11, 2008. (ECF No. 8-5.) Jackson's claim with Minnesota Life to recover under the life insurance policy was denied in early 2009. (ECF Nos. 11-5, at 6; 11-7, at 13-14.)

On April 29, 2016, Jackson filed his first lawsuit against Midland in the Shelby County General Sessions Court, alleging "[f]raudulently damaging wrongful termination of insurance policy and the periodic rule." (ECF No. 7-2.) Midland never responded to Jackson's lawsuit, and a default judgment was entered on August

- 2 -

17, 2016.  (ECF No. 7-3.)  Midland paid the $20,000 judgment in full and filed a Satisfaction of Judgment with the court on January 28, 2017.  (ECF Nos. 7-4; 11-7, at 18.)  Despite this, Jackson sued Midland a second time in the Shelby County General Sessions Court on August 15, 2017, asserting that the insurance policy was fraudulently canceled and that he was entitled to reimbursements both for the premiums paid on the life insurance policy and for "unearn[ed]" mortgage payments made to Midland.  (ECF No. 7-5.)  Jackson voluntarily nonsuited the second complaint after Midland filed a motion to dismiss on the basis that the earlier lawsuit "involv[ed] the same parties and same cause of action."  (ECF No. 7-6.)  On January 27, 2020, after Jackson advised Midland that he had not received any payment from the 2016 default judgment, Midland informed him that it had paid the agreed upon amount to his attorney on January 27, 2017, and that he should contact his attorney for any payment stemming from the default judgment.  (ECF No. 11-7, at 17.)  Jackson paid Midland the remainder of the amount owed on his mortgage on April 17, 2020.  (ECF Nos. 11-5, at 10; 11-7, at 19.)

    Jackson filed the lawsuit that is presently before the court on July 28, 2020, naming both Midland and Minnesota Life as defendants.  (ECF No. 1.)  In his complaint, Jackson again alleged that his mother's life insurance policy was fraudulently terminated and that, as a result, he is entitled to reimbursement

for the premiums paid under the life insurance policy and for his payments on the mortgage to Midland. (ECF No. 1, at 4.) He also noted that he had been awarded a default judgment in the first lawsuit and had been provided with "no relief." (ECF No. 1, at 4.) On September 4, 2020, Midland responded by filing a motion to dismiss the complaint, asserting that Jackson was precluded from bringing his claims under the doctrine of res judicata and that, in the alternative, he was barred from prosecuting them by the statute of limitations. (ECF No. 7.) Minnesota Life, in turn, filed an answer to Jackson's complaint on September 8, 2020, denying Jackson's substantive allegations and asserting several affirmative defenses. (ECF No. 8.)

    Jackson responded to Midland's Motion to Dismiss on September 25, 2020. (ECF No. 11.) In his response, Jackson expanded on the allegations in his initial complaint and stated that his lawsuit "is regarding a life insurance policy that was breach[ed] and wrongfull[y] terminat[ed]," specifically referencing the single life policy that was intended to cover his mortgage with Midland. (ECF No. 11-5, at 7.) Jackson's response contains several letters that he exchanged with both Midland and Minnesota Life that he annotated as "DAMAGE – The occurrence of change for the worse 1/31/2008." (ECF Nos. 11-2, 11-3, 11-4, 11-5.) The remainder of the response consists of documents related to the mortgage itself, his attempts to recover on the insurance policy, his payments to

Midland, and a brief argument as to why he is entitled to relief. (ECF No. 11.) Midland filed a reply to Jackson's response on October 12, 2020, reiterating its arguments that the complaint is precluded by res judicata and barred by the statute of limitations. (ECF No. 25.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

As a preliminary matter, the undersigned notes that Midland does not specify which Federal Rule of Civil Procedure it is relying on for its motion to dismiss. Because of the nature of the motion and the arguments contained therein, the undersigned will construe it as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

To avoid dismissal under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal

conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

"As a general rule, when considering a 12(b)(6) motion to dismiss, matters outside the pleadings may not be considered by the court." Metz v. Unizan Bank, No. 5:05-CV-1510, 2007 WL 3232431, at *1 (N.D. Ohio Oct. 31, 2007) (citing Sims v. Mercy Hosp. of Monroe, 451 F.2d 171, 173 (6th Cir. 1971)). If matters outside the pleadings are considered by the court, the motion must be "converted to a motion for summary judgment under Fed. R. Civ. P. 56." Id. at *1 (citing Carter v. Stanton, 405 U.S. 669, 671 (1972)). Despite this general rule, "a court may consider a document outside the pleadings if the pleadings refer to it," id. at *1 (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)), or "materials that are integral to the complaint, are public records, or are otherwise appropriate for taking judicial notice." Ashland, Inc. v. Oppenheimer & Co., Ins., 648 F.3d 461, 467 (6th Cir. 2011) (quoting Ley v. Visteon Corp., 543 F.3d 801, 805 (6th Cir. 2008)). Further, "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." Buck v. Thomas M. Cooley Law School, 597 F.3d 812, 816 (6th Cir. 2010) (citing Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008)).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally

construed.  Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). Even so, *pro se* litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading.  See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

**B.   Res Judicata**

Jackson's claims against Midland are barred by the doctrine of res judicata.  Res judicata deals with "the preclusive effect of a judgment."  Taylor v. Sturgell, 553 U.S. 880, 892 (2008). Pursuant to the full faith and credit statute, "records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."  28 U.S.C. § 1738.  Therefore, this court must look to Tennessee law to determine whether the default judgment in the General Sessions Court has preclusive effect on Jackson's claims in this court.  Basista Holdings, LLC v. Ellsworth Twp., 710 F. App'x 688, 695 (6th Cir. 2017) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.") (quoting Abbott v.

- 7 -

Michigan, 474 F.3d 324, 330 (6th Cir. 2007)).  As the Tennessee Supreme Court has explained:

> The party asserting a defense predicated on res judicata must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits.

Napolitano v. Bd. of Prof'l Responsibility, 535 S.W.3d 481, 496 (Tenn. 2017) (quoting Long v. Bd. of Prof'l Responsibility of Sup. Ct., 435 S.W.3d 174, 183 (Tenn. 2014)).

Here, it is clear that the underlying judgment was rendered by a court of competent jurisdiction.  See In re O'Rourke, 169 B.R. 383, 385 (M.D. Tenn. 1994) ("Under Tennessee law, 'an unreversed judgment of General Sessions Court is as final as a judgment rendered in a court of record,' and '[a] final judgment in General Sessions Court bars a subsequent suit in another court on the same subject.'") (quoting State v. McClintock, 732 S.W.2d 268, 270 (Tenn. 1987) and Clay v. Barrington Motor Sales, 832 S.W.2d 33, 34 (Tenn. Ct. App. 1992)).  Further, it is clear that the same parties were involved in both suits (albeit with an additional defendant in the instant suit).

The remaining two elements of res judicata are also satisfied.  In defining the concept of same claims or causes of action, the Tennessee Supreme Court and the Sixth Circuit have both adopted the approach of the Restatement (Second) of Judgments § 24 (1982),

which states that likeness exists where both cases "arise out of the same transaction or a series of connected transactions." Creech v. Addington, 281 S.W.3d 363, 380–81 (Tenn. 2009) (citing Restatement (Second) of Judgments § 24 (1982)); J.Z.G. Res., Inc. v. Shelby Ins. Co., 84 F.3d 211, 215 (6th Cir. 1996) (quoting Restatement (Second) of Judgments § 24 (1982), and cited in Wheeler v. Dayton Police Dep't, 807 F.3d 764, 767 (6th Cir. 2015)). Jackson's 2016 complaint in Shelby County General Sessions Court alleged "[f]raudulently damaging wrongful termination of insurance policy and the periodic rule." Similarly, the complaint that is currently before this court alleges "[f]raudulently damaging wrongful termination of insurance policy [and] the periodic rule." Further, the present complaint cites the docket number for the 2016 lawsuit and notes that Jackson had previously been awarded a default judgment for unearned mortgage premiums dating back to 2008. Thus, Jackson is seeking to recover from Midland under the same insurance policy and based on the same breach of contract claim for which he was awarded a monetary judgment in 2016. This satisfies the "same transactions or occurrences" test.

As for whether the prior judgment was final, "[o]nce a court enters default judgment, it becomes 'conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised.'" Rice v. Liberty Surplus Ins. Corp., 113 F. App'x 116, 122 (6th Cir. 2004) (quoting Lawhorn v. Wellford, 168

- 9 -

S.W.2d 790, 792 (Tenn. 1943)) (applying Tennessee law). Jackson's first lawsuit against Midland pleaded that Midland fraudulently and wrongfully terminated his mother's life insurance policy, making the default judgment "as conclusive as a judgment entered after the defendant appears[] as to all matters in issue." State ex rel. Agee v. Chapman, 922 S.W.2d 516, 518 (Tenn. Ct. App. 1995) (citing Beare v. Burnett, 39 S.W.2d 737 (Tenn. 1931)).  Because the prior suit culminated in a final judgment and because both suits are predicated on the same alleged breach of Jackson's insurance policy, the doctrine of res judicata applies to bar Jackson's claims against Midland.  The undersigned recommends that Midland's Motion to Dismiss be granted.[1]

### III. RECOMMENDATION

For the reasons above, the undersigned recommends that Midland's Motion to Dismiss be granted and that Midland be dismissed from the present action.

Respectfully submitted,

s/ Tu M. Pham_____
TU M. PHAM
Chief United States Magistrate Judge

October 22, 2020_____
Date

---

[1] In addition, Midland argues that Jackson's claims are barred by the statute of limitations.  Because the undersigned submits that Jackson's claims against Midland are precluded by res judicata, the undersigned need not reach the issue of whether Jackson's claims run afoul of the statute of limitations.

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**