IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| JOE WILLIE JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cv-2549-JTF-tmp |
| | ) | |
| MIDLAND MORTGAGE COMPANY,<br>et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Before the court is Defendant Minnesota Life Insurance Company's Motion to Dismiss, filed on October 30, 2020.[1] (ECF No. 32.) *Pro se* plaintiff Joe Willie Jackson initially filed suit against defendants Midland Mortgage Co. ("Midland") and Minnesota Life Insurance Co. ("Minnesota Life") on July 28, 2020, alleging that the defendants wrongfully terminated his insurance policy. (ECF No. 1.) Jackson responded to Minnesota Life's Motion to Dismiss on December 3, 2020. (ECF No. 35.) Minnesota Life replied to Jackson's response on December 9, 2020. (ECF No. 37.) Based on

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

the following analysis, it is recommended that the Motion to Dismiss be granted.

## I.   PROPOSOSED FINDINGS OF FACT

On September 28, 1994, Plaintiff Joe Willie Jackson's mother ("Ms. Jackson") was approved for a single life insurance policy with Defendant Midland Mortgage Co. ("Midland") – underwritten by Defendant Minnesota Life Insurance Co. ("Minnesota Life") – that was intended to cover a mortgage loan in the event of Ms. Jackson's death. (ECF Nos. 1, at 4; 11-6, at 6-9.) This policy was in addition to a joint accidental death policy that Midland had approved for Ms. Jackson the year before. (ECF No. 11-7, at 13.)

On October 1, 2007, Midland sent Jackson a letter advising him that the single life insurance policy would soon be subject to termination because his past due premiums were beginning to accumulate. (ECF No. 11-6, at 11.) Jackson's account with Midland remained in arrears through the early months of 2008 and, as a result, Midland terminated the single life insurance policy. (ECF No. 11-6, at 19.) Minnesota Life sent Jackson a letter notifying him of this on July 2, 2008. (ECF No. 8-2.) This left Ms. Jackson only insured under the accidental death policy. (ECF No. 11-7, at 13-14.) Ms. Jackson died of natural causes on September 11, 2008. (ECF No. 8-5.) Because the life insurance policy had been cancelled and her death was not caused by an accident, Jackson's claim with Minnesota Life to recover under the life insurance policy was

denied in early 2009. (ECF Nos. 11-5, at 6; 11-7, at 13-14.) When Jackson, through an attorney for the Memphis Fair Housing Center, inquired as to why the policy was cancelled and his claim denied, Minnesota life responded by saying that the policy had been cancelled for lapsed payments and that, because the policy was not active at the time of Ms. Jackson's death, it was "unable to consider payment on her behalf." (ECF No. 8-3, at 2-3.) On February 6, 2009, an attorney for Jackson sent Minnesota Life a letter disputing whether the policy should have been cancelled. (ECF No. 8-3, at 4.) In response, Minnesota Life sent Jackson's attorney a letter explaining when his family's payments on the plan began to lapse and when the policy was terminated. (ECF No. 8-3, at 5-6.)

On April 29, 2016, Jackson filed his first lawsuit against Midland in the Shelby County General Sessions Court, alleging "[f]raudulently damaging wrongful termination of insurance policy and the periodic rule." (ECF No. 7-2.) Midland never responded to Jackson's lawsuit, and a default judgment was entered on August 17, 2016. (ECF No. 7-3.) Midland paid the $20,000 judgment in full and filed a Satisfaction of Judgment with the court on January 28, 2017. (ECF Nos. 7-4; 11-7, at 18.) When Jackson tried to recover from Minnesota Life under the judgment, Minnesota Life sent him a letter on April 24, 2017, to inform him that Minnesota Life was not a party to the action and thus not subject to a levy. (ECF No. 8-3, at 7.)

Jackson filed the lawsuit that is presently before the court on July 28, 2020, naming both Midland and Minnesota Life as defendants. (ECF No. 1.) In his complaint, Jackson again alleged that his mother's life insurance policy was fraudulently terminated and that, as a result, he is entitled to reimbursement for the premiums paid under the life insurance policy and for his payments on the mortgage to Midland. (ECF No. 1, at 4.) He also noted that he had been awarded a default judgment in the first lawsuit and had been provided with "no relief." (ECF No. 1, at 4.) On September 4, 2020, Midland responded by filing a motion to dismiss the complaint, which the undersigned recommended be granted on October 22, 2020. (ECF Nos. 7, 30.) Minnesota Life, in turn, filed an answer to Jackson's complaint on September 8, 2020. (ECF No. 8.) Minnesota Life attached five exhibits to its answer, including (1) an email dated August 26, 2020, from Jackson to counsel for Minnesota Life where he requested reimbursements for payments on the mortgage and the insurance policy; (2) a notice of termination dated July 2, 2008, informing Jackson that Minnesota Life had cancelled the life insurance policy on February 28, 2008; (3) a sequence of letters dated January 12, 2009, January 28, 2009, February 6, 2009, and March 2, 2009, exchanged between Minnesota Life and counsel for Jackson disputing whether the life insurance policy had been terminated prior to Ms. Jackson's death, along with a letter dated April 24, 2017, informing Jackson that

Minnesota Life was not a party to his 2016 judgment against Midland; (4) a copy of a Shelby County General Sessions Court civil warrant and default judgment dated April 29, 2016; and (5) a copy of Ms. Jackson's death certificate. (ECF Nos. 8-1 to 8-5.) On October 30, 2020, following the undersigned's recommendation that the claims against Midland be dismissed, Minnesota Life filed the motion to dismiss that is currently before the court. (ECF No. 32.) In its motion, Minnesota Life argues that Jackson's complaint should be dismissed because it is barred by the statute of limitations, the doctrine of election of remedies, collateral estoppel, the law of the case doctrine, and, in any event, he has no damages. (ECF No. 33.)

When Jackson failed to timely respond to Minnesota Life's motion, the undersigned issued an Order to Show Cause on December 1, 2020, directing Jackson to file a response. (ECF No. 34.) Jackson eventually responded to Minnesota Life's motion to dismiss on December 3, 2020. (ECF No. 35.) In his response, Jackson argues that Midland's satisfaction of the state court judgment "did not impact the amount due on the loan." (Id.) Minnesota Life replied to Jackson's response on December 9, 2020, requesting that this court dismiss Jackson's claims with prejudice because Jackson's response did not address the merits of the motion. (ECF No. 25.)

## II. PROPOSED CONCLUSIONS OF LAW

### A. Standard of Review

Minnesota Life's motion is styled as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "After the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard of review for a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." Rose v. Cent. USA Wireless, LLC, No. 17-cv-2673-SHM-tmp, 2018 WL 2656767, at *3 (W.D. Tenn. June 4, 2018) (citing Monroe Retail, Inc. v. RBS Citizens, N.A., 589 F.3d 274, 279 (6th Cir. 2009)). "When ruling on a motion for judgment on the pleadings, federal courts look only to the facts contained in the pleadings." Savage v. Hatcher, 109 F. App'x 759, 760 (6th Cir. 2004) (citing Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997)) (emphasis omitted). Documents that are attached to a pleading are considered part of the pleading. Commercial Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007); Fed. R. Civ. P. 10(c).

To avoid dismissal under Rule 12(b)(6), "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to

- 6 -

draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011) (quoting Iqbal, 556 U.S. at 678). Without factual allegations in support, mere legal conclusions are not entitled to the assumption of truth. Iqbal, 556 U.S. at 679.

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed. Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004)). Even so, pro se litigants must adhere to the Federal Rules of Civil Procedure, see Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989), and the court cannot create a claim that has not been spelled out in a pleading. See Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); Payne v. Sec'y of Treas., 73 F. App'x 836, 837 (6th Cir. 2003).

**B.   Statute of Limitations**

Minnesota Life argues that Jackson's claims are barred by the statute of limitations. When a federal court is faced with analyzing a motion to dismiss pursuant to the statute of limitations, the court must address: "(1) whether the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." Henry v. Norfolk S. Ry. Co., 605 F. App'x 508, 510 (6th

Cir. 2015) (quoting <u>Campbell v. Grand Trunk W. R.R. Co.</u>, 238 F.3d
772, 775 (6th Cir. 2001)). Because the statute of limitations
varies by the type of case, the court must also determine which
statute of limitations is applicable to the case at hand.

Jackson's allegations can be construed under either a fraud
theory or a breach of contract theory. If the allegations are based
on a breach of contract theory, the statute of limitations in
Tennessee is six years and begins to accrue when the breach occurs
unless it is "inherently undiscoverable." Tenn. Code Ann. § 28-3-
109(a)(3); <u>Individual Healthcare Specialists, Inc. v. BlueCross
BlueShield of Tenn., Inc.</u>, 566 S.W.3d 671, 711-15 (Tenn. 2019);
<u>Coleman Mgmt., Inc. v. Meyer</u>, 304 S.W.3d 340, 349 (Tenn. Ct. App.
2009) (quoting <u>Wilkins v. Third Nat'l Bank in Nashville</u>, 884 S.W.2d
758, 762 (Tenn. Ct. App. 1994)) ("[T]he statute of limitations
begins to run when a contracting party first knows or should know
that the contract will not be performed."). A breach is inherently
undiscoverable where "the injured party is unlikely to discover
the wrong during the limitations period despite due diligence."[2]
<u>Goot v. Metro. Gov't of Nashville & Davidson Cty.</u>, No. M2003-

---

[2]In <u>Individual Healthcare Specialists, Inc. v. BlueCross BlueShield
of Tenn., Inc.</u>, the Tennessee Supreme Court questioned whether the
"inherently undiscoverable" doctrine was valid under Tennessee law
or if the six-year statute of limitations always begins to run on
the date a contract is breached. 566 S.W.3d at 709. Ultimately,
the Tennessee Supreme Court elected not to decide the validity of
the doctrine because, there, "the breach . . . [did] not qualify
as 'inherently undiscoverable' under any definition." <u>Id.</u> at 712.

02013-COA-R3-CV, 2005 WL 3031638, at *11 n.31 (Tenn. Ct. App. Nov. 9, 2005). Jackson filed his complaint on July 28, 2020. Thus, the breach must have either occurred after July 28, 2014, or been inherently undiscoverable until that date in order to not be barred by the statute of limitations.

Here, the life insurance policy was cancelled in 2008 and his claim on the policy was denied in 2009. Thus, any breach of the policy agreement would have occurred in either 2008 or 2009. See Coleman Mgmt., Inc., 304 S.W.3d at 348; Ginney Motel, Inc. v. Certain Underwriters at Lloyd's, London, No. 1:19-cv-01243-STA-jay, 2020 WL 7327321, at *5-6 (W.D. Tenn. Dec. 11, 2018) (citing Das v. State Farm Fire & Cas. Co., 713 S.W.2d 318, 320 (Tenn. Ct. App. 1986)) (holding that a claim for breach of insurance contract accrues "on the date of the insurer's first denial of coverage"). Based on the pleadings, Jackson could have discovered that the life insurance policy was cancelled around the time of the cancellation, as Minnesota Life sent him several letters intended to give him notice of the cancellation. Alternatively, he could have discovered any potential breach of the policy when his claim was denied, as his lawyer at the time exchanged letters with Minnesota Life disputing whether the policy should have been cancelled. Thus, any breach would have occurred before July 28, 2014, and was not "inherently undiscoverable" to justify tolling the statute of limitations.

If his allegations are predicated on a fraud theory, the applicable statute of limitations is three years. Tenn. Code Ann. § 28-3-105(1). However, the statute of limitations does not begin to run until "the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" Hulan v. Coffee Cty. Bank, No. M2018-00358-COA-R3-CV, 2019 WL 354870, at *3 (Tenn. Ct. App. Jan. 28, 2019) (quoting Redwing v. Catholic Bishop for the Diocese of Memphis, 363 S.W.3d 436, 459 (Tenn. 2012)). Thus, in order for his claims not to be barred by the statute of limitations, Jackson must have not had actual knowledge of the alleged fraud before July 28, 2017.

Even interpreting the pleadings in the light most favorable to Jackson, the undersigned submits that Jackson should have been aware of enough facts to put a reasonable person on notice that he had suffered an injury prior to July 28, 2017. See id.; see also Robinson v. Baptist Mem'l Hosp., 464 S.W.3d 599, 609 (Tenn. Ct. App. 2014) (quoting Schmank v. Sonic Automotive, Inc., No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn. Ct. App. May 16, 2008)) ("[W]here the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established

that judgment on the pleadings or dismissal of the complaint is appropriate."). For instance, Minnesota Life sent Jackson multiple letters in late 2008 and early 2009 informing him that the life insurance policy had been terminated and his claim had been denied, even explaining when his payments began to lapse. Additionally, he filed his first lawsuit against Midland alleging fraud in 2016 and was informed by Minnesota Life that it was not a party to that lawsuit on April 24, 2017. As such, Jackson should have been aware of any alleged fraud by Minnesota Life in terminating the insurance policy prior to July 28, 2017. Thus, regardless of how Jackson's claims against Minnesota Life are construed, his complaint runs afoul of the statute of limitations and must be dismissed.[3]

### III. RECOMMENDATION

For the reasons above, the undersigned recommends that Minnesota Life's Motion to Dismiss be granted and that Jackson's complaint be dismissed with prejudice.

Respectfully submitted,

s/ Tu M. Pham_____
TU M. PHAM
Chief United States Magistrate Judge

December 22, 2020_____

---

[3]Minnesota Life also argues that Jackson's complaint is barred by the doctrine of election of remedies, collateral estoppel and the law of the case doctrine, and is meritless because it does not state a claim for damages. Because the undersigned submits that Jackson's claims against Minnesota Life are barred by the applicable statutes of limitations, the undersigned need not reach Minnesota Life's remaining arguments.

Date

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**